UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**MARTIN D. KOENIG,**

        Plaintiff,

   v.                                      Case No. 05-C-255

**WAUKESHA STATE BANK,**

        Defendants.

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On March 7, 2005, Martin D Koenig ("Koenig") filed a complaint against Waukesha State Bank and three other defendants, all of whom were then creditors of Koenig. The parties have consented to the exercise of full jurisdiction by a magistrate judge.

Koenig sought relief pursuant to the Servicemembers Civil Relief Act ("the Act") 50 U.S.C. app., sections 518, 523, 527, 532, and specifically section 591. Koenig is a member of the United States Army Reserve and has served in various operations. In 2000, Koenig formed De Fibz Corp., a subchapter-S corporation, and in 2001 formed De Fibz Staffing, LLC. Prior to December of 2002, each of the defendants extended credit to either Koenig individually or to De Fibz Corp. In January 2003, Koenig was ordered to active duty for one year, February 18, 2003 through February 17, 2004. He was subsequently extended through September 16, 2004.

Koenig alleges that he provided written notice of his activation to each of his creditors, including all of the defendants, and notified all creditors that he was invoking his rights under the Act. Koenig alleges that the defendants did, or failed to do, various actions in violation of the Act.

On February 28, 2006, Waukesha State Bank filed a motion for summary judgment. Pursuant to the stipulations of the respective parties, Koenig's claims against all other defendants have been dismissed. The pleadings on Waukesha State Bank's motion for summary judgment are closed and the matter is ready for resolution.

## FACTUAL SUMMARY

In 2000, Martin Koenig and Jeffrey Mathy formed De Fibz Corporation. (Koenig Comp., ¶ 4; Aff. of Chadd M. Frank, ¶ 3, Feb. 28, 2006.) On November 3, 2000, De Fibz Corp. obtained a $90,000 loan from Waukesha State Bank ("WSB"). (WSB. Mot. Sum. Judg. Ex. A.) This loan was guaranteed by the Small Business Administration. (Aff. of Chadd M. Frank, ¶ 4, Apr. 12, 2006.) This loan was also unconditionally guaranteed by plaintiff Martin Koenig, his wife Cindy Koenig, (Def. Mot. Sum. Judg. Ex. B), and Jeffrey Mathy and his wife Lisa Mathy (Def. Mot. Sum. Judg. Ex. C). On March 19, 2002, WSB granted a deferral to De Fibz Corp. (Aff. of Chadd M. Frank, ¶ 7, Feb. 28, 2006.)

In January of 2003, Koenig was ordered to active duty with the United States Army for a period of one year. (Koenig Comp., ¶ 6.) This term was subsequently extended and Koenig was on active duty from February 18, 2003 through September 16, 2004. (Id.) Koenig provided written notice of his activation to his creditors, including WSB, and stated that he was invoking his rights under the Act. (Id. at ¶ 8.) In accordance with the Act, WSB reduced the interest rate on De Fibz's loan to six percent. (Koenig Resp. to Sum. Judg. 3-4.) WSB agreed that De Fibz would be permitted to make interest only payments during the period of Koenig's activation. (Koenig Resp. to Sum. Judg., 3; WSB Reply 3.) During the period of Koenig's activation, WSB assessed late charges against De Fibz. (Koenig Resp. to Sum. Judg. 3; WSB Reply 3.) De Fibz paid $302.69 in late-payment charges during Koenig's activation. (WSB Reply 3.) Prior to Koenig's activation, De Fibz owed $195.24 in late charges. (Id.) Following Koenig's return from active duty, De Fibz continued

to incur late-payment charges amounting to $1,366.30 through December 2005. (Id.) The late-payment charges incurred by De Fibz since Koenig's return from active duty have been waived by WSB. (Aff. of Chadd M. Frank, ¶¶ 5, 8, Apr. 12, 2006.)

Near the end of 2001, and particularly in the months immediately preceding Koenig's activation, payments on De Fibz's loan were often late or altogether missed. (Koenig Aff. Ex. A.) During Koenig's activation or after his return, De Fibz Corp. received a total of four deferrals. (Aff. of Chadd M. Frank, ¶ 7.) After Koenig's return from active duty, WSB maintained the six percent interest rate for an additional three months. (Aff. of Chadd M. Frank, ¶ 10, Feb. 28, 2006.) Since October of 2004, WSB has received an interest only payment of $339.89 on October 11, 2004 and a $371.30 payment on principal on March 2, 2005. (Id. at ¶ 11.) The March 2, 2005 payment was the result of WSB sweeping De Fibz's checking account. (Id.) Prior to this March 2, 2005 sweep of De Fibz's checking account, the last principal payment made on this loan was August 7, 2003. (Id. at ¶ 15.)

## SUMMARY JUDGMENT STANDARDS

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress

& Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## ANALYSIS

In his complaint, Koenig makes three substantive claims. First, Koenig alleges that WSB violated the Act by assessing late-payment charges during the period of his activation. Second, Koenig alleges that WSB violated the Act by arbitrarily refusing to negotiate the debt. Third, Koenig alleges that WSB will violate the Act by making an adverse report regarding Koenig's failure to pay the debt. WSB argues that summary judgment is appropriate because it has complied with the Act. Each of Koenig's allegations shall be addressed in turn.

### Servicemembers Civil Relief Act

On December 19, 2003, Congress passed the Servicemembers Civil Relief Act to restate, clarify, and revise the Soldiers' and Sailors' Civil Relief Act of 1940. H.R. 100, 108th Cong. (2003). The codified purposes of the Act are to strengthen and expedite the national defense by permitting servicemembers to devote their energy to the defense needs of the Nation and "to provide for the temporary suspension of judicial administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C.

4

Appx. § 502. In interpreting the preceding act, the Supreme Court held that the "Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." Boone v. Lightner, 319 U.S. 561, 575 (1943); see also Le Maistre v. Leffers, 333 U.S. 1, 6 (1948).

Servicemembers are granted certain substantive rights under the Act to satisfy its stated purpose. Relevant to this case, the Act caps at six percent per annum the interest payable on all of a servicemember's debts, § 527(a)(1), provided that the servicemember's ability to pay more than six percent interest is materially affected by his service, § 527(c). Also, the service member may obtain a stay in the enforcement of his obligations equal to the length of his service in which the servicemember may repay the interest accrued and principal due during his service, § 591(b)(2)(B). Finally, creditors are prohibited from using the fact that a servicemember exercised his rights under the Act as a basis for determining that the servicemember debtor is unable to pay the obligation in accordance with its terms, § 518(1), or making an adverse report as to the creditworthiness of the servicemember, § 518(3).

**Late-Payment Charges**

Koenig argues that there remains a factual dispute as to whether WSB violated § 527 of the Act by assessing late-fees at a rate in excess of six percent per annum during the period of Koenig's activation. WSB concedes that it did assess these fees and does not appear to dispute Koenig's argument that this conduct violated the Act. Instead, WSB argues that it has, in turn, waived subsequent late-charges incurred by De Fibz since Koenig's return from active duty

> Section 527 provides:
>
> (a) Interest rate limitation
> (1) Limitation to 6 percent
>
> An obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent per year during the period of military service.

(2) Forgiveness of interest in excess of 6 percent

Interest at a rate in excess of 6 percent per year that would otherwise be incurred but for the prohibition in paragraph (1) is forgiven.

(3) Prevention of acceleration of principal

The amount of any periodic payment due from a servicemember under the terms of the instrument that created an obligation or liability covered by this section shall be reduced by the amount of the interest forgiven under paragraph (2) that is allocable to the period for which such payment is made.
(b) Implementation of limitation

(1) Written notice to creditor

In order for an obligation or liability of a servicemember to be subject to the interest rate limitation in subsection (a), the servicemember shall provide to the creditor written notice and a copy of the military orders calling the servicemember to military service and any orders further extending military service, not later than 180 days after the date of the servicemember's termination or release from military service.

(2) Limitation effective as of date of order to active duty

Upon receipt of written notice and a copy of orders calling a servicemember to military service, the creditor shall treat the debt in accordance with subsection (a), effective as of the date on which the servicemember is called to military service.
(c) Creditor protection
A court may grant a creditor relief from the limitations of this section if, in the opinion of the court, the ability of the servicemember to pay interest upon the obligation or liability at a rate in excess of 6 percent per year is not materially affected by reason of the servicemember's military service.
(d) Interest
As used in this section, the term "interest" includes service charges, renewal charges, fees, or any other charges (except bona fide insurance) with respect to an obligation or liability.

There is no factual dispute as to whether WSB violated § 527(a)(1) of the Act. WSB concedes that it did so by assessing late-payment fees that had the consequence of exceeding the maximum interest rate of six percent per annum, as interest is defined in § 527(d). Not only does WSB concede that it improperly assessed late-payment charges, but it further concedes that De Fibz paid a total of $107.45 that it otherwise should not have. However, WSB defends this action on the basis that it appropriately remedied its action by waiving $1,366.30 in late-charges incurred since Koenig's return from active duty and otherwise owed by De Fibz. Koenig does not dispute that this $1,366.30 in late-payment charges were rightfully owed to WSB or that WSB waived these charges.

6

As a remedy for the defendant's violations of § 527, Koenig demands in his complaint refunds of any interest charges or late-payment fees made during his activation period in excess of six percent per annum. (Compl., ¶ 16.) In waiving $1,366.30 in subsequent late-payment charges incurred by De Fibz, WSB has gone far beyond its obligation to refund its improperly assessed late-payment charges. Based upon the undisputed facts, Koenig has obtained the relief sought and therefore his claim is moot. Thus, in regards to this claim, summary judgment in favor of the defendant shall be granted.

### Obligation to Negotiate

Second, Koenig argues that WSB violated section 591 of the Act by arbitrarily refusing reasonable settlement offers. WSB argues in reply that it has no obligation to settle the undisputed debt. The question of whether the Act imposes upon creditors an obligation to negotiate the debts of servicemember debtors is a question of law and therefore may be appropriately resolved in a motion for summary judgment.

Koenig provides absolutely no citations to support his assertion that "[c]reditors are required to enter into good faith negotiations to provide for a payment plan that will permit the rehabilitation of the person who has served his country and ultimately provide full payment on the obligation of the creditor." (Koenig Resp. to Sum. Judg. 6.) In fact, other than making references to the Act, Koenig provides no citation to any legal authority anywhere in his brief opposing's WSB's motion for summary judgment.

In relevant part, section 591 states:

(a) Application for relief. A servicemember may, during military service or within 180 days of termination of or release from military service, apply to a court for relief--
(1) from any obligation or liability incurred by the servicemember before the servicemember's military service; or
(2) from a tax or assessment falling due before or during the servicemember's military service.
(b) Tax liability or assessment. In a case covered by subsection (a), the court may, if

7

> the ability of the servicemember to comply with the terms of such obligation or liability or pay such tax or assessment has been materially affected by reason of military service, after appropriate notice and hearing, grant the following relief:
> * * *
> (2) Stay of enforcement of other contracts.
> (A) In the case of any other obligation, liability, tax, or assessment, the court may grant a stay of enforcement--
> (i) during the servicemember's military service; and
> (ii) from the date of termination of or release from military service, or from the date of application if made after termination or release from military service.
> (B) Any stay under this paragraph shall be--
> (i) for a period of time equal to the period of the servicemember's military service or any part of such period; and
> (ii) subject to payment of the balance of principal and accumulated interest due and unpaid at the date of termination or release from military service, or the date of application, in equal periodic installments during this extended period at the rate of interest as may be prescribed for this obligation, liability, tax, or assessment, if paid when due, and subject to other terms as may be equitable.
> (C) Affect of stay on fine or penalty. When a court grants a stay under this section, a fine or penalty shall not accrue on the obligation, liability, tax, or assessment for the period of compliance with the terms and conditions of the stay.

There is nothing in § 591 that obligates creditors to negotiate the settlement of servicemember's debts. Rather, § 591 empowers courts to stay creditor enforcement actions against servicemember debtors in the period of their service and in a period equivalent to the length of their service immediately following their active service. However, this stay is subject to two conditions. First, the stay shall not be longer than the servicemember's period of active service, and second, the debtor shall be required to make equal periodic payments of principal and accumulated interest due and unpaid at the time of the servicemember's termination or release from military service. 50 U.S.C. App. § 591 (b)(2)(B).

Included at the end of the section stating that the stay is subject to equal periodic payments is the requirement that payments shall be "subject to other terms as may be equitable."  Section 591(b)(2)(c). Precisely what this language means is unclear. Perhaps Koenig intends to argue that this language imposes upon creditors an affirmative duty to negotiate servicemember debts. However, this court need not decide what precisely this language means or what, if any, obligations

8

it imposes upon creditors and servicemember debtors because, based upon a plain reading of the statute, this provision is inapplicable to the present case.

As previously stated, § 591(b)(2)(B) requires that a court-imposed stay in the enforcement of contracts be subject to two requirements. The first is a requirement as to the length of the stay, specifically, the stay shall not be longer than the servicemember's length of military service. The second is a requirement of payment, specifically that during the stay period the servicemember shall make equal periodic installments of the interest and principal accrued during the servicemember's military service. These two requirements are set forth in separate subsections and joined by an "and" clearly stating that both must be present for the servicemember debtor to be entitled to a stay in the enforcement of his obligation. It is only at the end of the second subsection, the subsection requiring equal period payments of the accrued interest and principal due, that the phrase "and subject to other terms as may be equitable," is included. Again, this phrase is preceded by an "and" thereby indicating that it is subject to the preceding requirements.

In the present case, there is no dispute that Koenig has failed to make equal periodic payments of the interest accrued and principal due from the time of his service. Rather, Koenig seeks to restructure De Fibz's debt and avoid his obligation to make equal period payments within the set period of time. Under the Act, Koenig is not entitled to restructure the debt and the court is unable to order that WSB negotiate restructuring. Koenig's relief is limited to the relief set forth in the Act; after Koenig's return from service, he has time equal to the length of his service in which to make equal periodic payments of the interest accrued and principal due from his time of service. Any additional equitable terms that may be appropriate in any given situation are subject to this condition. Koenig does not seek additional equitable terms but rather seeks to avoid the requirement that he make equal periodic payments. Based upon a plain reading of the statute, Koenig is not

9

entitled to this relief under the Act. Therefore, as to this claim, the defendant's motion for summary judgment shall be granted.

## Adverse Reporting

Finally, Koenig argues that there is a dispute as to how the stay period should be administered. Specifically, Koenig argues that even after the stay period has expired, WSB should be prohibited under § 518(3) of the Act from taking any action with respect to Koenig's credit worthiness for actions that occurred during the stay period. WSB replies by arguing that upon Koenig's return from active duty, WSB is merely required to grant De Fibz time equivalent to the length of Koenig's activation to make up the deferred principal payments. WSB argues that Koenig is asking the court to ignore § 591 of the Act and instead fashion a remedy over and above what the Act allows.

Again, this dispute is entirely a matter of law and may be appropriately resolved in a motion for summary judgment. Section 518, entitled "Exercise of rights under Act not to affect certain future financial transactions," states:

> Application by a servicemember for, or receipt by a servicemember of, a stay, postponement, or suspension pursuant to this Act [50 USCS Appx §§ 501 et seq.] in the payment of a tax, fine, penalty, insurance premium, or other civil obligation or liability of that servicemember shall not itself (without regard to other considerations) provide the basis for any of the following:
> (1) A determination by a lender or other person that the servicemember is unable to pay the civil obligation or liability in accordance with its terms.
> (2) With respect to a credit transaction between a creditor and the servicemember--
> (A) a denial or revocation of credit by the creditor;
> (B) a change by the creditor in the terms of an existing credit arrangement; or
> (C) a refusal by the creditor to grant credit to the servicemember in substantially the amount or on substantially the terms requested.
> (3) An adverse report relating to the creditworthiness of the servicemember by or to a person engaged in the practice of assembling or evaluating consumer credit information.
> (4) A refusal by an insurer to insure the servicemember.
> (5) An annotation in a servicemember's record by a creditor or a person engaged in the practice of assembling or evaluating consumer credit information, identifying the servicemember as a member of the National Guard or a reserve component.
> (6) A change in the terms offered or conditions required for the issuance of insurance.

10

Section 518(3) prohibits a creditor from using the fact that a servicemember debtor applied for a stay as the basis for an adverse report of credit worthiness. Therefore, if WSB were to make an adverse report to a credit bureau regarding Koenig's credit worthiness based upon the fact that Koenig applied for a stay under the Act, WSB would violate § 518(3). However, WSB has not indicated that this is what it intends to do. Rather, Koenig objects to WSB's stated intention to report that Koenig has failed to satisfy his obligation of making equal periodic payments of the owed amount during the stay period. A plain reading of § 518 indicates that this sort of reporting would not be prohibited under the Act. Koenig provides no support for his argument that such reporting is prohibited.

Therefore, WSB is prohibited from reporting the fact of Koenig's request for a stay itself as a basis for an adverse report regarding Koenig's credit worthiness; however, WSB may, if applicable and subject to all other laws governing the matter, adversely report that Koenig has failed to satisfy his obligation within the stay period. Thus, in regards to this claim, summary judgment shall be granted in favor of the defendant.

## ATTORNEY'S FEES

WSB included in its motion for summary judgment a request for attorney's fees and costs and notes that nothing in the Act prohibits the imposition of actual costs and attorneys fees incurred. WSB argues that this order would be reasonable because De Fibz has made no payments of interest or principal since this action was commenced.

In light of the fact that the Act does not specifically authorize the award of attorney's fees and costs and the fact that such an award may have the effect of dissuading servicemembers from exercising the rights they are guaranteed under the Act, the court shall deny the defendant's motion for attorney's fees and costs.

## CONCLUSION

For all the reasons stated herein, the court now enters the following order on Waukesha State Bank's motion for summary judgment:

**IT IS THEREFORE ORDERED** that Waukesha Savings Bank's motion for summary judgment is **granted**. The Clerk shall enter judgment dismissing the plaintiff's complaint and this case with prejudice.

**IT IS FURTHER ORDERED** that the Waukesha Savings Bank's motion for attorney's fees and costs is **denied**.

Dated at Milwaukee, Wisconsin this 10th day of August, 2006.

s/AARON E. GOODSTEIN
United States Magistrate Judge